IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANCIS GATES, Individually and as Administrator for the Estate of Olin Eugene "Jack" Armstrong, PATI HENSLEY, SARA HENSLEY, and JAN SMITH, et al., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 11 C 8715 12 C 2983 |
| Plaintiffs, v. | | |
| SYRIAN ARAB REPUBLIC, et al., | | Judge Virginia M. Kendall |
| Defendants. | | |
| JP MORGAN CHASE BANK, N.A., | | |
| Interpleader Plaintiff, v. | | |
| FRANCIS GATES, Individually and as Administrator for the Estate of Olin Eugene "Jack" Armstrong, PATI HENSLEY, SARA HENSLEY, and JAN SMITH, et al., | | |
| Interpleader Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Frances Gates, individually and as administrator for the estate of Olin Eugene Armstrong, Pati Hensley, Sara Hensley and Jan Smith (together "Plaintiffs" or "Gates Plaintiffs") move for turnover of assets in the form of electronic funds transfers ("EFTs") believed to belong to the Banque Centrale de Syrie ("BCS") and presently held in two intermediary bank accounts located at JPMorgan Chase Bank, N.A. ("JPMCB"). In response to the original motion for turnover, JPMCB filed a complaint for interpleader, Case No. 12-2983

(the "JPMCB Interpleader"). This Court denied the Gates Parties' motion to dismiss the JPMCB Interpleader and ordered the parties to serve each third party involved in the EFTs with notice of the JPMCB Interpleader and the Gates Parties' proposal for turnover.

Having now completed that notice process as directed, the Gates Parties have filed a Third Motion for Turnover. The Gates Parties' Third Motion is granted subject to the directions set forth herein. Upon satisfaction of these directions, the related interpleader action filed by JPMCB will be dismissed.

## RELEVANT FACTS

### A. Case History

The Gates Plaintiffs initiated this case on December 8, 2011 when they registered their $412,909,587 judgment against the Syrian Arab Republic ("Syria") in this district. The United States District Court for the District of Columbia entered the $412,909,587 judgment on September 26, 2008 as compensation to the Gates Plaintiffs for Syria's acts of state-sponsored terrorism that facilitated the kidnapping, torture, and murder-by-beheading of Americans Olin Eugene "Jack" Armstrong and Jack L. Hensley in 2004. The Gates plaintiffs acquired this judgment under the Foreign Sovereign Immunity Act's ("FSIA") "terrorism exception," 28 U.S.C. § 1605A, and the District of Columbia Circuit Court affirmed that judgment on May 20, 2011. *See Gates v. Syrian Arab Republic*, 646 F.3d 1 (D.C. Cir. 2011). Syria filed an appearance and contested the $412,909,587 judgment before the D.C. Circuit Court.

On August 23, 2011, the D.C. District Court issued an order pursuant to 28 U.S.C. § 1610(c), finding that a reasonable period of time had elapsed from the entry of final judgment and notice to Syria and therefore Plaintiffs were authorized to enforce the court's judgment.

After the Gates Plaintiffs registered their judgment in this district, this Court[1] issued a third-party citation to discover assets to JPMCB (the "Citation"). The Gates Plaintiffs served the Citation on a JPMCB bank branch in Elgin, Illinois. Pursuant to a protective order, JPMCB answered the Citation and indicated that JPMCB held accounts that might be responsive to the Citation. Based on JPMCB's answer to the Citation, the Gates Plaintiffs filed two motions for turnover against JPMCB, one related to certain third-party funds held at JPMCB and owned by AT&T, Inc. that were destined for a Syrian telecommunications company (the "First AT&T Turnover Motion") and the second - the EFT Turnover Motion that is the subject of this Opinion - related to certain EFTs that involved the Banque Central de Syrie but are presently held by JPMCB in its capacity as intermediary bank.

On February 13, 2012, six days after the Gates plaintiffs filed the First AT&T Turnover Motion, attorneys for another group of plaintiffs (the "Baker Plaintiffs"), who also held a judgment against Syria and had registered that judgment in this district, *Baker v. Syrian Arab Republic*, 11 C 8913, filed a motion to intervene in this matter. The Baker Plaintiffs argued that they should be allowed to intervene in the Gates case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because their interest in any Syrian funds held by Chase was superior to the Gates plaintiffs' interest in those funds. In a February 15, 2012 order, this Court granted the Baker Plaintiffs' permissive intervention into this case pursuant to Rule 24(b)(1)(B). Shortly after allowing the Baker Plaintiffs to intervene in this case, for purposes of judicial economy and with the agreement of the district court in this case, case 11 C 8913 was transferred

---

[1] This case commenced before Judge Lindberg. The case transferred to this Court by Executive Order on August 30, 2012.

to this Court's docket. Accordingly, the Gates and Baker cases, 11 C 8715 and 11 C 8913 respectively, are now assigned to this Court.

On March 7, 2012, this Court issued an opinion determining that the Gates Plaintiffs had first-priority rights to any Syrian funds at issue in the first motion for turnover, and determined that AT&T, Inc., the owner of the account at issue in the First AT&T Turnover Motion, was the proper party to whom a motion should be directed, and therefore denied the First AT&T Turnover Motion with leave to refile. The Gates Plaintiffs refiled the motion, this time directed at AT&T (the "Second AT&T Turnover Motion" Docket No. 77) on March 9, 2012.

On March 13, 2012, AT&T filed a related complaint for interpleader (Case No. 12-1836, the "AT&T Interpleader Complaint") to determine the relative priority of the rights of all parties with respect to the funds contained in the accounts at issue in the Second AT&T Turnover Motion. On April 23, 2012, JPMCB filed the JPMCB Interpleader Complaint to determine the relative priority of the rights of all parties with respect to the funds at issue in the EFT Turnover Motion. Both cases being related to the Gates and Baker cases, the AT&T Interpleader Complaint and the JPMCB Interpleader Complaint were consolidated with the Gates and Baker cases. The Gates Plaintiffs moved to dismiss both interpleader actions.

On August 30, 2012, these related cases transferred to this Court. On September 29, 2012, this Court granted the Second AT&T Turnover Motion and, subject to agreement by the parties on the terms of a turnover order, granted the motion to dismiss the AT&T Interpleader Complaint. The Baker Parties filed a motion to reconsider the March 7, 2012 order on grounds of personal jurisdiction over the accounts at issue in the First and Second AT&T Turnover Motions. Today, this Court denied the motion to reconsider. The Court now turns to the

pending EFT Turnover Motion and related motion to dismiss the JPMCB Interpleader Complaint.

## B. The EFT Turnover Motion

Plaintiffs served the Citation on JPMCB on December 8, 2011. JPMCB returned the Citation and indicated that it had two accounts, each held in the role of "Intermediary Bank" and each containing the proceeds of electronic funds transfers (the "EFTs') in which BCS was in some way involved. The two accounts holdings the proceeds of the EFTs (the "Blocked Accounts") total roughly $76 million. JPMCB also revealed a simple deposit account in the name of BCS (the "Deposit Account") containing $419 as of the time of the citation. The Gates Plaintiffs moved for turnover of the EFTs and the Deposit Account (the "EFT Turnover Motion", 11-8715 #39) pursuant to 28 U.S.C. § 1610(g) and § 201(a) of the Terrorism Risk Insurance Act ("TRIA") because BCS is an "agency or instrumentality" of Syria.

By Memorandum Opinion and Order dated March 29, 2013 (11-8715 #147), this Court denied the Gates Parties' Motion to Dismiss the JPMCB Interpleader Complaint and denied without prejudice the vast majority of the Gates Parties' EFT Turnover Motion.[2] As part of that Memorandum Opinion, this Court determined that BCS is an "agency or instrumentality of Syria" under the TRIA and that the EFTs, now residing in the Blocked Accounts, are "blocked assets" under the TRIA (11-8175 #147 at 12). But because the Court could not determine based on the record provided whether the EFTs were blocked assets as "of" BCS in order to permit attachment by the Gates Plaintiffs, the Court ordered JPMCB, as the party who filed an

---

[2] The Court granted the EFT Turnover Motion with respect to the Deposit Account at JPMCB, whose ownership was not in question. However, almost the entirety of the $76 million is located in the Blocked Accounts, whose turnover was denied without prejudice. Also as part of the March 29, 2013 Memorandum Opinion, the Court dismissed the Bates Parties from the JPMCB Interpleader action.

Interpleader Complaint about the ownership of the funds in the Blocked Accounts, to provide notice to each of the Intermediary Banks involved in the EFTs to provide them the opportunity to object to appear before this Court and object to the Gates Plaintiffs' position that BCS owned the funds in the Blocked Accounts and to address JPMCB's concerns about any liability for turning over the contents of the Blocked Accounts.

### C. Proceedings since the March 29, 2013 Memorandum Opinion

Since publication of the March 29, 2013 Memorandum Opinion, the Gates Parties and JPMCB have appeared before the Court periodically to report the status of the notice process. JPMCB, as plaintiff to the JPMCB Interpleader Complaint, has provided notice of these suits to the Intermediary Banks, Qatar National Bank ("QNB"), and Commerzbank AG and Commerzbank Aktiengesellschaft New York Branch (together, "Commerzbank"), and to BCS.

### D. Finding of Fact Regarding Notice to Interpleader Defendants

Commerzbank answered the JPMCB Interpleader Complaint, denied ownership interest in the Blocked Accounts, and provided evidence in the form of a declaration under oath of a Commerzbank employee that the EFTs that passed through Commerzbank both originated with BCS and were destined for BCS as beneficiary. (*See* 11-8715 Dkt # 185-1). Commerzbank also identified via declaration that QNB and JPMCB were intermediary banks only and were not originators or beneficiaries of the EFTs. *Id.* Finally, the Commerzbank declarant authenticated the EFT records as business records of Commerzbank.

As stated on the record in open court on Commerzbank's motion, JPMCB and the Gates Plaintiffs are agreeable to dismissing the JPMCB Interpleader Complaint against Commerzbank

following entry of a mutually agreeable order releasing both JPMCB and Commerzbank from liability for the EFT amounts. (Tr. 11/13/13)]

QNB likewise has disclaimed ownership of the Blocked Accounts, and has provided documentary evidence that the EFTs, although destined for QNB, were in fact destined for an account of BCS at QNB. (*See* 11-8715 Dkt. 185-4). QNB produced authenticated business records of QNB by which agents of BCS advised QNB to expect to receive from JPMCB via Commerzbank the funds presently located in the Blocked Accounts. (*Id.*) QNB responded to BCS that the funds had not been received. (*Id.*) QNB and JPMCB have reached a settlement absolving JPMCB of liability to QNB for amounts in the Blocked Accounts, and QNB has been dismissed from the JPMCB Interpleader Action. (12-2983 Dkt. #86).

JPMCB has itself disclaimed ownership interest in the Blocked Accounts. (11-8715 Dkt. #185-5). JPMCB has provided interrogatory evidence that it was the intermediary bank for EFTs that were owned by BCS and therefore blocked the completion of the EFTs in accordance with the Syrian sanctions regulations and established the Blocked Accounts to hold the funds. (*Id.*) JPMCB has also provided interrogatory evidence that it knows of no other third parties other than BCS that have an ownership interest in the EFTs or the Blocked Accounts. (*Id.*)

Finally, JPMCB served BCS with the JPMCB Interpleader Complaint on June 13, 2013. (12-2983 Dkt. #79). BCS did not timely respond to the service. On August 28, 2013, the Court entered default against BCS. (12-2983 Dkt. #104).

## DISCUSSION

**A. The Gates Plaintiffs Have Met their Burden to Present Evidence that the Blocked Accounts are "property of" BCS.**

In the March 29, 2013 Memorandum Opinion, this Court analyzed the interaction of 1610(g) and the TRIA and made certain findings, namely that BCS is an "agency or instrumentality" of Syria and that the Blocked Accounts are assets subject to the TRIA. But the Court in the March 29, 2013 Memorandum Opinion ultimately denied the EFT Turnover Motion because the record as presented at that time did not yet conclusively establish that the Blocked Accounts, containing the funds transferred by the EFTs, are "blocked assets *of*" BCS in order to permit attachment by the Gates Plaintiffs under the terms of the TRIA.[3] Specifically, the Gates Plaintiffs had not presented evidence to establish that the other third parties involved in the chain of transfers making up the EFTs did not have an ownership interest in the funds.

Now, the Gates Plaintiffs with the aid of JPMCB have met their final evidentiary burden. JPMCB and the Gates Plaintiffs have contacted each of the banks involved in the EFTs and given them notice of these proceedings. The Intermediary Banks have each disclaimed ownership of the funds in the Blocked Accounts, and have provided documentary evidence that

---

[3] Section 201 of the TRIA states, in relevant part:

(a) In General.–Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, ***the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)*** shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), codified at 28 U.S.C. § 1610 Note.

BCS is the rightful owner of the funds in the Blocked Accounts because the funds in the Blocked Accounts both originated with BCS and were destined for BCS as the beneficiary. This evidence, that BCS is both originator and beneficiary of the EFTs, shows that the funds in the Blocked Accounts are "property of" BCS; taken together with the Court's previous findings in the March 29, 2013 Memorandum Opinion that BCS is an "agency or instrumentality" of Syria, the Gates Plaintiffs have established that the funds in the Blocked Accounts are "property of that terrorist party" per the requirements of TRIA § 201. Therefore, the funds in the Blocked Accounts may be turned over to the Gates Plaintiffs in satisfaction of their judgment against Syria.

Having made this evidentiary finding that BCS is the owner of the funds in the Blocked Accounts, the Court does not need to wade into the disagreement between the Gates Parties and JPMCB as to whether state property law pre-empts the TRIA in determining the ownership interest of EFT proceeds that are frozen in the United States by operation of the TRIA. That same disagreement is also the subject of a district court split presently pending on appeal in the Second Circuit. *See Hausler v. JPMorgan Chase Bank, N.A.*, *appeal docketed*, No. 12-1272 (2d Cir. April 5, 2012) (appealing both *Hausler* and *Ruth Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389 (S.D.N.Y. 2011)). But in the case of the EFTs at issue in this action, the Gates Plaintiffs have presented uncontroverted evidence that BCS was both the originator and the beneficiary of the funds; in essence, these EFTs were internal transfers by BCS to move funds from BCS accounts at one bank, in one country, to BCS accounts at another bank in another country. Therefore, to the extent that JPMCB is concerned about liability under state law to either the beneficiary, on the one hand, for failing to complete the EFT due to the

OFAC block, or to the originator, on the other hand, for failing to issue a refund of an incomplete transfer, that concern is irrelevant in this particular case because those two parties are the same: BCS. And BCS, per this Court's previous order, has been found to be an agent or instrumentality of Syria, bringing the funds squarely under the TRIA.

**B. JPMCB, as Intermediary Bank, is not liable to third parties for the funds in the Blocked Accounts.**

JPMCB commenced the JPMCB Interpleader Action pursuant to Federal Rule of Civil Procedure 22 out of concern that it would be held liable by some third party for turning over the funds in the Blocked Accounts in satisfaction of the Gates Plaintiffs' judgment. At this point in the proceedings, all third parties other than BCS have expressed their agreement that JPMCB should be absolved from liability for complying with this Court's directive that the funds in the Blocked Accounts be turned over to the Gates Plaintiffs. Therefore, the Gates Plaintiffs are directed to consult with JPMCB to compose mutually agreeable language for the order granting turnover of the Blocked Accounts that will release JPMCB from third party liability.

At the close of JPMCB's Response to the Third Motion for Turnover, JPMCB briefly referenced its entitlement to the payment of attorney fees for commencing the JPMCB Interpleader. The reference is brief and cites a single case that is not binding upon this district, and does not state with specificity whom should pay the fees. The Gates Plaintiffs oppose this motion in their Reply in Support of the Third Motion for Turnover. Since this issue has not been fully briefed, JPMCB is directed to move for attorneys' fees via separate motion in its interpleader action.

C.  **Order for Turnover will be Stayed Pending Resolution of Baker Parties' Appeal.**

Finally, the Baker Parties have already appealed the March 09, 2012 Memorandum Opinion that determined the Gates Plaintiffs had first priority to the assets at issue in this action. The Baker Parties appealed following this Court's September 29, 2012 Memorandum Opinion granting the Second AT&T Turnover Motion and dismissing the AT&T Interpleader. Because a reversal of the March 9, 2012 Memorandum Opinion's determination of the application of 28 U.S.C. §1610(c) could result in the Baker Plaintiffs taking first priority to the AT&T Assets, the order granting the Second AT&T Turnover Motion stayed the turnover upon a timely notice of appeal. (11-8715 Dkt. #163 at ¶41(p)). Because the subject of the pending appeal has the same potential to affect this Third Motion for Turnover, the parties are directed to include parallel language to the AT&T Order in the agreed order to be submitted to effectuate the terms of this opinion.

## CONCLUSION

For the reasons stated herein, the Gates Plaintiffs' Third Motion for Turnover is granted, subject to entry of an agreed order according to the directions set forth herein.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 13, 2013