UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
--------------------------------------------------------------------X  Case No.: 11-cv-8715 (VMK)

FRANCIS GATES, et al.,

                Plaintiffs,

-against-

THE SYRIAN ARAB REPUBLIC, et al.,

                Defendants,

-against-

MARY NELL WYATT, et al.,

                Adverse Claimants.
--------------------------------------------------------------------X

Related to Case No.:
14-cv-6161 (VMK)

**ADVERSE CLAIMANTS'
OPPOSITION TO THE
MOTION OF THE GATES
PLAINTIFFS FOR ORDER
DIRECTING CLERK TO
RELEASE FUNDS FROM
COURT REGISTRY**

1.    Adverse Claimants the *Wyatt* plaintiffs respectfully make this submission in opposition to the motion of the *Gates* plaintiffs' Motion for Order Directing Clerk to Release Funds from Court Registry (DE 251) as supplemented on August 15, 2014 (DE 259).[1]

---

[1] The *Gates* plaintiffs' "Supplemental Motion" filed on August 15, 2014 is a bizarre submission. It was filed essentially *apropos* of nothing, a bid by the *Gates* plaintiffs to anticipatorily respond to something that had not yet been filed. In that submission, the *Gates* plaintiffs recklessly accused the undersigned of not being a member of the Bar of this Court, an assertion as to which the *Gates* plaintiffs are in error, and which they could have simply verified on this Court's website; or they might have realized that the fact that the undersigned has made filings by ECF means that I have an ECF password and hence am a member of the Bar of this Court.

    Equally recklessly, the *Gates* plaintiffs insinuated that because in an unrelated case called *Gilmore* the undersigned has been co-counsel with Richard Heideman, Esq., who has represented the *Baker* plaintiffs in this case, the application I am making here on behalf of my clients the *Wyatt* plaintiffs must be collusive That suggestion is pure absurdity. There are a limited number of lawyers who handle terrorist victim cases and the resultant judgment enforcement proceedings and over the years I have been both adverse to and on the same side as many of them in different cases. Neither my clients nor I share any common interest with Mr. Heideman or his firm in this

1

2. For the reasons below, the Adverse Claimants oppose and respectfully request that the Court deny with prejudice the Motion of the *Gates* Plaintiffs for Order Directing Clerk to Release Funds from Court Registry (DE 251) as supplemented on August 15, 2014 (DE 259).

3. As detailed in the Amended Motion for Order Directing Clerk to Release Funds and to Turnover Funds from Court Registry being filed simultaneously in *Wyatt v. Syrian Arabic Republic*, Case No. 14-cv-6161(VMK), which is incorporated herein by reference and attached as **Exhibit 1**, the Adverse Claimants hold a judgment against Syria in the amount of $338 million arising from a terrorist attack, which they are entitled and are seeking to satisfy from the Syrian funds deposited into the registry of this Court in the above-captioned matter.

4. As further detailed in the Amended Motion, the *Gates* plaintiffs are **barred** from enforcing their judgment against those Syrian funds (or any other assets), because they

---

case, and indeed we are adverse to the *Baker* plaintiffs' position as well. It is also beyond odd that the *Gates* plaintiffs would accuse me of collusion on the basis of one case in which I happen to be co-counsel with Mr. Heideman, when the *Gates* plaintiffs' Washington, D.C. counsel, Steven Perles, Esq. shares the same office as Richard Heideman, and both Mr. Heideman and Mr. Perles are co-counsel in various cases, for example *Kleiman v. Palestinian Auth.*, D.C. Dist. Ct. Docket no. 04-cv-1173.

Lastly, the *Gates* plaintiffs recklessly allege that the *Wyatt* plaintiffs' arguments asserted herein to enforce their judgment—which was entered December 17, 2012, affirmed by the D.C. Circuit on January 30, 2014, the mandate issued on March 12, 2014, and authorized to be enforced by the D.C. District Court on May 19, 2014, are somehow foreclosed by a ruling made by the D.C. district court in the *Gates* case on February 6, 2009 (Exhibit 2). If one actually reads that ruling, though, the ludicrousness of the *Gates* plaintiffs' argument is readily apparent. What happened is that earlier in the *Gates* case the *Gates* plaintiffs sought to enforce their judgment, and the *Wyatt* plaintiffs protested that the *Gates* plaintiffs should not be permitted to do so because the *Wyatt* plaintiffs had filed a *lis pendens* in the D.C. District Court. The *Gates* court denied the *Gates* plaintiffs' application to enforce their judgment without prejudice pending disposition of Syria's appeal from the judgment, and. consequentially denied the *Wyatt* plaintiffs' application to intervene in that application as moot. (Exhibit 2).

2

admittedly never served their judgment on Syria, as expressly required by § 1608(e) of the FSIA. As shown in the Adverse Claimants' Amended Motion, that failure is fatal:

> Plaintiff … concedes her failure to serve, or even attempt to serve, a copy of the default judgment on Gulf Air or Aviation Services. This undisputed fact, by itself, *is dispositive*. The FSIA mandates that a copy of the default judgment be served on the foreign agency or instrumentality in accordance with the procedures outlined in section 1608(b). See 28 U.S.C. §§ 1608(b), 1608(e). ***Plaintiff's failure to do so directly contravenes the requirements of the FSIA and, therefore, deprives this Court of the power to enforce the Illinois judgment***. 28 U.S.C. §§ 1330(b) and 1608(e).

*LeDonne v. Gulf Air, Inc.*, 700 F. Supp. 1400, 1414 (E.D.Va. 1988) (emphasis added). *See also e.g. Peterson v. Islamic Republic of Iran*, 2012 WL 4485764 (S.D. Tex. 2012) (denying enforcement due to failure to properly serve judgment because "[i]n order to execute a default judgment against a foreign sovereign, plaintiffs must first demonstrate that service of the judgment strictly complies with the statutory requirements of section § 1608(a) … to depart from the statutory scheme would disregard congressional intent and U.S. diplomatic interests in ensuring proper service of foreign governments."); *Cortez Byrd v. Corporacion Forestal y Industrial de Olancho*, 974 F. Supp. 2d 264, 273 (S.D.N.Y. 2013) (same).

5. The Seventh Circuit has held that pursuant to 735 ILCS 5/2–1402(g), which is applicable here by operation of Fed. R. Civ. P. 69, the Adverse Claimants are statutorily entitled to appear herein and oppose the *Gates* plaintiffs' motion for release of the Syrian funds in the above-captioned case, and to fully litigate that opposition, without the necessity of a formal motion to intervene herein. *See U.S. v. Macchione*, 309 Fed. Appx. 53, 55 (7th Cir. 2009) (explaining that 735 ILCS 5/2–1402(g) "require[s] the court to allow any party who asserts an interest in the property to 'appear and maintain his or her right' to the property …without filing a motion to intervene."). *See also e.g. Martin Produce, Inc. v. El Centro, LLC*, 2011 WL 10068659

(Ill. App. 1 Dist. 2011) ("The statutory provisions require that any person who appears to have a claim on property discovered pursuant to a citation to discover assets must be given an opportunity to appear and maintain his claim. 735 ILCS 5/2–1402(g)"); *B.J. Lind & Co. v. Diacou*, 3 Ill.App.3d 299, 301-302 (1972) (holding that it was reversible error to not to afford adverse claimants "the opportunity to prove their respective claims.").

6. In the "Supplement" in support of their motion filed by them on August 15, 2014 (DE 259)[2] the *Gates* plaintiffs claim that under the "mandate rule" this Court must grant their motion, and cannot consider or determine the Adverse Claimants' opposition to the motion. This argument is meritless for several reasons.

7. ***First***, the "mandate rule" is inapplicable to the Adverse Claimants, who were not parties to this proceeding prior to the appeal, much less the proceedings before the Seventh Circuit. Indeed, the Adverse Claimants have brought their own, entirely separate and plenary proceeding, in which they are seeking turnover of the funds at issue. If the Adverse Claimants prevail in that proceeding, the *Gates* plaintiffs' motion will necessarily be denied. The "mandate rule" is not relevant to the Adverse Claimants who are strangers to the prior proceedings.

8. ***Second***, as the *Gates* plaintiffs admit in their Supplement, the "mandate rule" applies only to issues that were decided by the Court of Appeals. *See e.g. EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) ("In general, any issue conclusively decided by [the Seventh Circuit] on appeal may not be reconsidered by the district court on remand."). But the issue decided by the Seventh Circuit on appeal in this case related solely to whether the *Gates* plaintiffs were required to and had complied with FSIA § 1610(c), and did not touch upon,

---

[2] The *Gates* plaintiffs' substantive supplementation of a motion scheduled for a Monday with a filing on the previous Friday violates this Court's two business-day scheduling rule, and is grounds to adjourn their motion until a later, timely-noticed date.

4

much less decide, whether they had complied with § 1608(e)—which is the gravamen of the Adverse Claimants' opposition and motion for turnover. *See* Exhibit 1, *passim*.

9. Indeed, the *Gates* plaintiffs frankly admit in their papers that the appeal decided by the Seventh Circuit had nothing to do with § 1608(e):

> The Bakers' claim of priority contested the Gates Plaintiffs' compliance with § 1610(c) but ***never contested notice to Syria under § 1608(e)***.

DE 259 at 3 (emphasis added).

10. Thus, since as the *Gates* plaintiffs admit, the *Baker* plaintiffs "never contested notice to Syria under § 1608(e)," and so the Seventh Circuit did not reach this issue at all, and therefore the Seventh Circuit's mandate does not govern this issue.

11. Moreover, as explained in the Adverse Claimants' Amended Motion (Exhibit 1), the *Baker* plaintiffs never raised this issue because they, too, had failed to serve Syria as required by § 1608(e). Therefore, because both parties to the appeal passively but effectively colluded to keep the § 1608(e) issue off the radar of this Court and the Seventh Circuit, it played no part in any prior adjudication in this case. Thus, the "mandate rule" does not apply to this question.

12. ***Third***, even if the "mandate rule" applied to the Adverse Claimants and to the question at issue, which it does not, "[a]n appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries." *Barrow v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993). Specifically, and among other reasons, the district court can and should deviate from the mandate whenever it finds "the sort of circumstance that justifies modification under Fed. R. Civ. P. 60(b)." *Id.*

13. Such a circumstance is clearly present here. As detailed in the Adverse Claimants' Amended Motion (Exhibit 1), the *Gates* plaintiffs never complied with § 1608(e), and are therefore prohibited from enforcing their judgment. Indeed, that "failure …directly contravenes

5

the requirements of the FSIA and, therefore, deprives this Court of the power to enforce the … judgment." *LeDonne*, 700 F. Supp. at 1414.

14. Moreover, even if the Court had the power to do so, "to depart from the statutory scheme would disregard congressional intent and U.S. diplomatic interests in ensuring proper service of foreign governments." *Peterson*, 2012 WL 4485764 at *3.

15. Clearly, those are circumstances that would "justif[y] modification under Fed. R. Civ. P. 60(b)." *Barrow*, 11 F.3d at 731. In fact, in *Cortez Byrd*, 974 F.Supp.2d at 273, the court granted Rule 60(b) relief in similar circumstances—the court had initially allowed judgment enforcement proceedings to proceed without compliance with § 1608(e) but when the affected party appeared and pointed out the non-compliance to the court the court disallowed the non-compliant party from enforcing its judgment. *Id.*

16. In sum: the mandate rule is inapposite here from multiple reasons.

17. The *Gates* plaintiffs also attempt to manipulate the Court's heartstrings, asserting that they have "worked and waited for many years" for this money. DE 259 at 4. The Court should ignore "arguments" of this sort, which have no place in a court of law and amount to unseemly "special pleading." The fact is that *all* the groups of plaintiffs involved in this matter − the *Wyatt* plaintifs, the *Gates* plaintiffs, and the *Baker* plaintiffs− are victims of vile terrorist activity supported and sponsored by Syria, and *all* deserve to be compensated, in full, by Syria. No one set of plaintiffs is "better" or "more deserving" than another in the eyes of the law. But, regrettably, as the Seventh Circuit noted, "victims of terror can … find themselves pitted in a cruel race against each other—a race to attach any available assets to satisfy the judgments. The terms of the race are essentially winner-take-all." *Gates v. Syrian Arab Republic*, 755 F.3d 568, 571 (7th Cir. 2014).

18. As shown in the Adverse Claimants' Amended Motion (Exhibit 1), both the *Gates* (and *Baker*) plaintiffs attempted to win this "cruel race" unfairly, by taking a short-cut around § 1608(e) that the D.C. Circuit found to be invalid and ineffective. Accordingly, the *Gates* plaintiffs' motion for turnover of the funds must now be rejected—just as the Seventh Circuit did not hesitate to reject the *Baker* plaintiffs' claims, when it found that the law so required.

Dated:     Brooklyn, New York
           August 17, 2014

        Respectfully submitted,

        THE BERKMAN LAW OFFICE, LLC
        *Attorneys for the Wyatt Adverse Claimants*

by: _____
        Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

**CERTIFICATE OF SERVICE**

This is to certify that on August 17, 2014 I caused the foregoing Notice of Filing to be electronically filed via the Court's ECF system, and service has therefore been made upon all counsel of record.

Dated:        Brooklyn, New York
                August 17, 2014

                                      Respectfully submitted,

                                      THE BERKMAN LAW OFFICE, LLC
                                      *Attorneys for the Wyatt Adverse Claimants*

                                        by: _____
                                              Robert J. Tolchin

                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        718-855-3627